RHEUBOTTOM ET AL. VS. SADLER EXR.

Upon the death of the plaintiff in attachment before service of the writ—the
declaration, affidavit, and bond having been filed, and the writ issued—the suit
may be revived in the name of his executor, and alias writ issued, without a new
bond or affidavit

Where judgment is rendered against several defendants — some of them having
appeared and pleaded to the action, and others having made default—this Court
will not, on the appeal of those appearing to the action, look at objections to the
sufficiency of the service upon those making default.

The plaintiff's testator hired his slave to the defendants, for the years 1850 and 1851,
in California, upon a contract for one-half of the proceeds of the labor of the
slave—the slave labored for the defendants, and they received the proceeds of his
labor: *Held*, That they were bound to account to the plaintiff, according to the
contract.

*Appeal from Johnson Circuit Court.*

Hon. WILLIAM H. FEILD, Special Judge.

WALKER & GREEN, for the appellants.

The fir t and second pleas of Logan were good, and the Court erred in sustaining the demurrur to the first. (*Wilson et al. vs. Shannon and wife*, 1 *Eng*. 196; *Delano, et al. vs. Kennedy*, 5 *Ark*. 459; *Childres vs. Fowler*, 4 *Eng*. 159.)

The order of publication was insufficient to authorize a judgment against Boon and Ellison Logan, in not stating " the nature of the plaintiff's demand." (See *sec*. 24, *ch*. 17, *Digest* 177, *and Brodie vs. Skelton*, 6 *Eng*. 120;) nor was the affidavit of the editor of the paper, in which it was published sufficient proof of its publication. (*Sec*. 25 *ch*. 17. *Dig.; sec*. 1 *ch*. 8, *Dig*., *Brodie vs. Skelton, cited above*.)

We submit whether the Court below erred in refusing to give in charge to the jury the 11th instruction called for by plaintiff.

JORDAN for the appellee, contended that the suit having been commenced in the lifetime of the plaintiff, (*sec*. 2, *ch*. 126 *Dig*., 5 *Eng*. 120, 479; 6 *Ib*. 334, 13 *Ark*. 36,) might well be revived in the name of his executor at any time, (*Dig. ch*. 1, *sec*. 7, 4, 5, 6, 14, 19. That the order of publication as to the non-resident defendants, if not a literal, is a substantial compliance with the statute. That the 11th instruction was properly refused, as the proof clearly shows that defendants hired the slave and received the benefit of his labor, and as such was bound to pay for it whether slavery existed in California or not.

Mr. Chief Justice ENGLISH, delivered the opinion of the Court.

It appears from the record, that on the 24th of March, 1853, whilst the Johnson Circuit Court was in session, James Murphy filed therein a declaration, in assumpsit, affidavit and bond, and sued out a writ of attachment against Wm. Rheubottom, Ellison Logan, Boon Logan, and Dickson Logan, returnable to the next term of the Court. The writ was placed in the hands of the sheriff on the day it was issued, and on the next day returned by the sheriff with an endorsement thereon, that the

OF THE STATE OF ARKANSAS. 493

TERM, 1858.]          Rheubottom et al. vs. Sadler ex.

plaintiff had died after the writ came to his hands, but before its execution.

On the 25th of March, (the day on which the writ was returned,) the plaintiff's attorney appeared in Court, and suggested his death, and made it appear that his will had been duly probated, and letters testamentary granted to Rufus C. Sadler as executor thereof; and he appearing in Court, and asking to be substituted as plaintiff, etc., an order was made reviving the suit, and directing it to progress in his name, as such executor of the deceased plaintiff; and that an alias writ of attachment be issued against the defendants; and the cause continued.

Under the alias writ, issued in the name of Sadler as executor, etc., personal property was attached, and a return of service upon Rheubottom and Dickson Logan, and not found as to Ellison Logan and Boon Logan.

1. In the progress of the cause, Rheubottom and Dickson Logan, appeared, and interposed several pleas in abatement of the writ, upon which issues of law and of fact were made up, by a complicated process of pleadings consisting of replications, rejoinders, demurrers, etc., the substance of which it is of no consequence to state, and which resulted in a finding and judgment against the pleas, and in favor of the validity of the writ. After final judgment against all of the defendants, Rheubottom and Dickson Dogan appealed to this Court. If the alias writ of attachment was regularly issued, the judgment of the Court upon all the pleadings in abatement was correct.

The declaration, affidavit and bond were filed, and the original writ of attachment issued, and placed in the hands of the sheriff, before the death of the plaintiff, Murphy. The suit had therefore been commenced before his death, and was pending when he died, according to the repeated decisions of this Court. *McLarren et al. vs. Thurman*, 3 *Eng.* 313; *State Bank vs. Carson et al.*, 5 *Ib.* 479.

By the death of Murphy, the suit did not abate, but was regularly revived, and directed to progress, in the name of the exec-

utor. *Dig. ch.— sec* 7, *etc.*; *Noland vs. Leech ex.*, 5 *Eng.* 504. But the original writ having been returned, in consequence of the death of the plaintiff, before it was executed, it was necessary, of course, to issue an alias. The declaration, the affidavit, and the bond were in no way abated or affected by his death, and there was no necessity for the executor to file a new bond or affidavit before the alias writ of attachment could issue, as supposed by the pleas in abatement.

2d. The appellants (Rheubottom and Dickson Logan,) next insist, that the order of publication of notice to their co-defendants in the Court below, (Ellison and Boon Logan,) and the affidavit of the publisher of the newspaper in which the publication was made, were informal, and not sufficient to authorize a judgment by default against the said Ellison and Boon.

It will be time enough to look into these objections when Ellison and Boon Logan ask a revision of the judgment. The alleged errors are not such as the appellants have any right to complain of. (See *Nevill vs. Hancock et al.*, 15 *Ark.* 511.

3d. The only remaining point made in the argument of the counsel for the appellants, is that the Court erred in refusing the 11th instruction moved, upon the trial, by Rheubottom.

The declaration contained two counts: the first, for money had and received, etc.; and the second, for work and labor of the plaintiff's testator, Murphy, and his slave, etc.

The general issue was interposed by the defendant Rheubottom, and a jury empannelled to try that issue, etc., and to assess the damages against the defendants in default.

On the trial it was proven that in the winter of 1849, plaintiff's testator hired a negro man to the defendants, who were at that time partners in the gold digging business in California; and that by the terms of the contract, the defendants were to pay, and did pay, to testator, in advance $500, for the hire of the negro man for 100 days; after the close of which time the defendants were to account for, and pay to testator, the one half of the negro's earnings, and bring him with them to Arkansas on their return from California. That the defen-

dents took the negro into their possession, and kept him at work at the mines in California from thence until they left there, on their return to this State, which was in November, 1851. That they arrived at the Isthmus of Darien, on the Pacific, on their return home, with the negro, about the 10th of December, 1851, where the defendant Dickson Logan started back to California, taking the negro with him, and the other defendants came on home. That the negro was never brought to this State by either of the defendants, but was left, by the defendant Dickson Logan, in California, where he has remained ever since.

The remaining evidence conduces to show the amount of gold received by the defendants from the labor of the negro, during the years 1850 and 1851.

The 11th instruction moved by Rheubottom, and refused by the Court, is as follows:

" 11th. If the jury find from the evidence that the contract of hiring was entered into in the State of California, and that such contract was respecting the services of a negro slave to be performed in that State, in the years 1850 and 1851, they should find for the defendants."

The evidence shows that in pursuance of the contract of hiring, the negro labored for the defendants, during the years 1850 and 1851, and that they received the proceeds of his labor. No reason has been suggested by the counsel for the appellants why they should not account to the plaintiff for the value of the gold due to the testator, from the labors of the negro, under the terms of the contract; and we know of none.

There was no proof upon the trial that slavery was abolished in California during the period of the hiring. If the Court judicially knew that fact, which we do not decide, there is no evidence that the defendants lost the benefit of the services of the negro in consequence thereof. On the contrary, it appears that he labored for them, and they received the proceeds of his labor, up to the time they started home with him in November, 1851.

The judgment is affirmed.